United States District Court
Southern District of Texas
**ENTERED**
February 10, 2025
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| VS. | § | CRIMINAL ACTION NO. 2:23-CR-518 |
| | § | |
| RAYMOND ANDREW LUNA | § | |

## ORDER ON DEFENDANT'S MOTION TO DISMISS

Defendant Raymond Andrew Luna stands indicted on one count of possessing a firearm as a convicted felon in violation of 18 U.S.C. § 922(g)(1). D.E. 1. Before the Court is Luna's motion to dismiss the indictment and supplemental brief (D.E. 19, 23) and the Government's response and supplemental response (D.E. 20, 22). This Court heard oral arguments on January 23, 2025. For the reasons stated below, the Court **GRANTS** the motion.

## ARGUMENTS PRESENTED

Luna argues that the statute under which he was indicted is unconstitutional for three reasons. First, he argues that § 922(g)(1) violates the Second Amendment of the United States Constitution, as applied to him, pursuant to the Supreme Court's opinion in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022). D.E. 19, pp. 5-10. Second, he argues that § 922(g)(1) is facially unconstitutional. *Id.* at pp. 10-13. Third, he argues that Congress exceeded its authority under the Commerce Clause when enacting the statute. *Id.* at pp. 13-14.

1 / 13

**DISCUSSION**

I.    **Legal Standard**

A.  *Bruen* **Framework**

In *Bruen*, the Supreme Court explained the analysis courts must conduct when determining whether a firearm regulation is consistent with the Second Amendment. The Court stated:

> When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct.  The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation.  Only then may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

*Bruen*, 597 U.S. at 24.

The Supreme Court clarified this analysis in *United States v. Rahimi*, 602 U.S. 680 (2024). While reaffirming *Bruen*'s focus on historical tradition, the Court emphasized that "the Second Amendment permits more than just those regulations identical to the ones that could be found in 1791." *Rahimi*, 602 U.S. at 690-91. The Court explained that courts "must ascertain whether the new law is relevantly similar to laws that our tradition is understood to permit, applying faithfully the balance struck by the founding generation to modern circumstances." *Id.* at 681 (quotation marks omitted) (citing *Bruen*, 597 U.S. at 29). The law must comport with the principles underlying the Second Amendment, but it need not be a 'dead ringer' or a 'historical twin.'" *Id.* (citing *Bruen*, 597 U.S. at 30).

"Why and how the regulation burdens the right are central to this inquiry." *Id.* (citing *Bruen*, 597 U.S. at 29). So, "if laws at the founding regulated firearm use to address particular problems, that will be a strong indicator that contemporary laws imposing similar restrictions for similar reasons fall within a permissible category of regulations." *Id.* at 692. Such a regulation may still not be compatible with the right if it regulates arms-bearing "to an extent beyond what was done at the founding." *Id.*

### B.  Fifth Circuit Precedent

***United States v. Diaz.*** The Fifth Circuit has addressed the constitutionality of § 922(g)(1) in the wake of *Bruen* and *Rahimi*. *United States v. Diaz*, 116 F.4th 458 (5th Cir. 2024). In *Diaz*, the defendant was charged with possessing a firearm as a felon in violation of § 922(g)(1). *Id.* at 461. He had been previously convicted in state court of theft of a vehicle, evading arrest, and possession of a firearm as a felon. *Id.* at 462. The defendant appealed his § 922(g)(1) conviction, arguing that it was unconstitutional under the Second Amendment both facially and as applied to him. *Id.*

In its opinion, the Fifth Circuit began by abandoning its pre-*Bruen* precedent because "*Bruen* [] established a new historical paradigm for analyzing Second Amendment claims," which had the effect of "rendering [the court's] prior precedent obsolete." *Id.* at 465 (quoting *United States v. Rahimi,* 61 F.4th 443, 451 (5th Cir. 2023), *rev'd and remanded*, 602 U.S. 680 (2024)).[1]

---

[1] The pre-*Bruen* abrogated precedent includes *United States v. Darrington*, 351 F.3d 632 (5th Cir. 2003), and *United States v. Emerson*, 270 F.3d 203 (5th Cir. 2001).

The Court then laid out and applied the two-step analysis mandated by *Bruen*. At the first step, courts consider whether the challenged law regulates conduct within the scope of the Amendment, and if so, "the Constitution presumptively protects that conduct." *Id.* at 463-64. Because "[t]he plain text of the Second Amendment covers the conduct prohibited by § 922(g)(1)," the burden shifted to the government at the second step "to demonstrate that regulating [the defendant's] possession of a firearm is 'consistent with the Nation's historical tradition of firearm regulation.'" *Id.* at 467 (quoting *Bruen,* 597 U.S. at 24). To meet its burden, the government had to show that there was longstanding tradition of disarming someone with a criminal history analogous to the predicate convictions of vehicle theft, evading arrest, or possessing a firearm as a felon. *Id.* at 467.

The *Diaz* court noted that "[a]t the time of the Founding, the death penalty was 'the standard penalty for all serious crimes.'" *Id.* (quoting *Baze v. Rees*, 553 U.S. 35, 94 (2008) (Thomas, J., concurring in the judgment)). The court then analogized vehicle theft to the founding-era offense of horse theft, a crime for which offenders were subject to the death penalty. *Id.* at 468 (citing Kathryn Preyer, *Crime and Reform in Post-Revolutionary Virginia*, 1 Law & Hist. Rev. 53, 73 (1983)). This showed that "our country has a historical tradition of severely punishing people like [defendant] who have been convicted of theft." *Id.* at 468-69.

The court held that the "why" of § 922(g)(1) was similar to the "why" of the theft laws: "to deter violence and lawlessness." *Id.* at 469. As for the "how," the court determined that the theft laws achieved their purpose by "permanently punishing offenders, as does

4 / 13

§ 922(g)(1)." *Id.* This punishment included capital punishment, and if this was "permissible to respond to theft, then the lesser restriction of permanent disarmament that § 922(g)(1) imposes is also permissible." *Id.*

**Subsequent Cases.** Since *Diaz*, the Fifth Circuit has addressed additional cases challenging the constitutionality of § 922(g)(1). In *United States v. Contreras*, the court held that the statute was constitutional as applied to a defendant with a predicate offense of user in possession of a firearm. 125 F.4th 725, 733 (5th Cir. 2025). In conducting its analysis, the court detailed the conduct and facts of the predicate offense—the defendant was pulled over for a traffic stop, at which point the police officer smelled marijuana and found marijuana in the vehicle along with photographs of the defendant possessing firearms and marijuana; a search of the defendant's home led to the discovery of a firearm. *Id.* at 730. The defendant was still on supervised release for this previous offense at the time of the §922(g)(1) violation. *Id.*

The court analogized the predicate offense of user in possession of a firearm to founding-era laws punishing intoxication via alcohol, stating that there was "a tradition of regulating [the defendant's] predicate offense because he *was* intoxicated while he possessed the gun." *Id.* at 732. The court held that there was a history and tradition of both "taking away [felons'] weapons while they complete their sentence" as well as "disarming those that are intoxicated." *Id.* at 732-33.

Next, the Fifth Circuit considered an as-applied challenge to § 922(g)(1) from a defendant who had previously been convicted of possessing a firearm while being an

unlawful user of a controlled substance in violation of § 922(g)(3). *United States v. Giglio,* No. 24-60047, 2025 WL 274968, at *1 (5th Cir. Jan. 23, 2025). He was on supervised release for that offense at the time of the § 922(g)(1) violation and was prohibited from owning, possessing, or accessing firearms. *Id.* The court held that there was an established "historical tradition wherein 'convicts could be required to forfeit their weapons and were prevented from reacquiring arms until they had finished serving their sentences.'" *Id.* at *4 (quoting *United States v. Moore*, 111 F.4th 266, 271 (3rd Cir. 2024)). Supervised release constitutes a part of the final sentence for a crime. *Id.* at *3 (citing *Moore*, 111 F.4th at 271).

The court noted that its "holding turn[ed] on the fact that [the defendant] was still on supervised release at the time of his arrest," and therefore the court "need not look to any dismissed charges, convictions for crimes not punishable for more than a year, or convictions stemming from the same indictment, which are the pieces of information proscribed by *Diaz*." *Id.* at *5 (citing *Diaz,* 116 F.4th at 467).

In another recent case, the Fifth Circuit upheld the constitutionality of § 922(n), which makes it unlawful for a person under indictment for a felony to ship, transport, or receive a firearm. *United States v. Quiroz,* 125 F.4th 713, 725 (5th Cir. 2025). The court held that "[o]ur nation has a long history of disarming criminal defendants facing serious charges pending trial," and the regulation fit "within our nation's historical tradition of protecting the public from criminal defendants indicted for serious offenses." *Id.* at 718, 723-24.

6 / 13

## II.    Analysis

### A. As-Applied Challenge

Now the Court turns to applying the Second Amendment jurisprudence as it stands to the specific facts of Luna's case. The first step in the *Bruen* analysis is met because the prohibited conduct in § 922(g)(1) is covered by the plain text of the Second Amendment. *Diaz*, 116 F.4th at 467.

#### 1.  Historical Analogue to Predicate Offense

At the second step, the Government has the burden of demonstrating that regulating Luna's possession of a firearm is consistent with the historical tradition of disarming someone with a criminal history of possession of a controlled substance, Luna's predicate offense. The Government need only identify an offense that is a "representative historical analogue, not a historical twin." *Id.* (quoting *Bruen*, 597 U.S. at 30).

**Contraband**. To carry its burden, the Government points to founding-era legislation that punished possession or trafficking of contraband. D.E. 20, p. 19. These laws made the trading of stolen horses a capital crime and punished mail theft and the making or trading of counterfeit or forged securities with the death penalty.[2] While the Government attempts to analogize founding-era "contraband" with today's "controlled substances," the Court finds that the reference to "contraband" is too broad to serve as a "representative historical

---

[2] *See* 6 William Waller Hening, *The Statutes at Large: Being a Collection of All the Laws of Va. from the First Session of the Legislature, in the Year 1619*, 130 (1819) (1748 law); An Act for the Punishment of Certain Crimes Against the United States, 1 Stat. 112, 115 (1790); An Act to Establish the Post-Office and Post Roads within the United States, 1 Stat. 232, 237 (1792).

7 / 13

analogue." The *Diaz* court, in finding a close historical equivalent, analogized the defendant's predicate offense of vehicle theft to *horse* theft, not theft generally.

Several district courts in the Fifth Circuit have addressed as-applied challenges to § 922(g)(1) from defendants with predicate drug convictions. However, the majority of these cases concerned predicate offenses involving the sale of a controlled substance, intent to deliver a controlled substance, or other drug trafficking offenses, not mere possession. *See United States v. Barfield*, No. 2:24-CR-00007-01, 2024 WL 4859094, at *1 (W.D. La. Nov. 21, 2024); *United States v. Robinson*, No. CR 22-253, 2024 WL 4827375, at *6 (E.D. La. Nov. 19, 2024); *United States v. Hendrickson*, No. 3:23-CR-00418-E, 2024 WL 5113495, at *5 (N.D. Tex. Dec. 13, 2024); *United States v. Carter*, No. CR 23-22, 2024 WL 4723236, at *2 (E.D. La. Nov. 8, 2024); *United States v. Mack*, No. 3:24-CR-00244, 2025 WL 221808, at *1 n.2 (W.D. La. Jan. 16, 2025). And some of these cases involved multiple predicate offenses to consider. *See United States v. Garner*, No. CR 5:24-00112-01, 2024 WL 4820794, at *2 (W.D. La. Nov. 18, 2024); *United States v. Wilson*, No. CR 22-238, 2024 WL 4436637, at *4 (E.D. La. Oct. 6, 2024); *Barfield*, 2024 WL 4859094, at *1; *Hendrickson*, 2024 WL 5113495, at *5; *Carter*, WL 4723236, at *2; *Mack*, 2025 WL 221808, at *1.

One district court in the Fifth Circuit denied a defendant's as-applied challenge to § 922(g)(1) when the predicate offense was solely for possession of a controlled substance. *United States v. Patino*, No. 24-CR-60-DC, 2024 WL 5010146, at *5 (W.D. Tex. Nov. 26, 2024). The court cited cases involving predicate offenses of drug distribution, sale of a

controlled substance, possession with intent to deliver a controlled substance, or other drug trafficking offenses. *See Wilson,* 2024 WL 4436637, at \*4; *United States v. Reichenbach*, No. 4:22-CR-00057, 2023 WL 5916467 (M.D. Pa. Sept. 11, 2023); *United States v. Pearson*, No. CR 22-271, 2023 WL 6216527, at \*3 (E.D. Pa. Sept. 25, 2023); *United States v. Wise*, No. CR 21-511, 2023 WL 6260038, at \*4 (W.D. Pa. Sept. 26, 2023); *United States v. Canales*, 702 F. Supp. 3d 322, 323 (E.D. Pa. 2023); *United States v. Jackson*, 110 F.4th 1120, 1122 (8th Cir. 2024).[3]

The Fifth Circuit has made clear that not all felonies are created equal, and the *Bruen* inquiry requires "not only showing that someone convicted of any felony was punished in a comparable way but that someone convicted of an analogous felony was punished in a comparable way." *Contreras,* 125 F.4th at 731 (citing *Diaz*, 116 F.4th at 467). The Court finds that historical contraband laws are not sufficiently analogous to possession of a controlled substance, the only predicate offense at issue here.

**Bond and Indictment**. In a supplemental response, the Government proffers that Luna was on bond and indicted on a state charge for unlawful possession of a firearm by a felon at the time of the § 922(g)(1) violation. D.E. 22, pp. 2-3. The Government then cites *Quiroz*, which confirmed the constitutionality of § 922(n) by holding that there was a

---

[3] In one of the cases cited, *United States v. Goins*, 647 F. Supp. 3d 538 (E.D. Ky. 2022), *aff'd*, 118 F.4th 794 (6th Cir. 2024), the predicate offenses were possession of a controlled substance, driving under the influence on a suspended license, and a fourth offense for driving under the influence. The Sixth Circuit upheld the district court's denial of the as-applied challenge, primarily because the defendant was on supervised release at the time. *Goins*, 118 F.4th at 804 ([M]ost importantly, at the time [the defendant] possessed the firearm [] he was in violation of a condition of his four-year state probation term."). The court also noted that the defendant's driving under the influence convictions pointed to "a likelihood of future dangerous conduct." *Id.* ("[The defendant's] record reveals a dangerous pattern of misuse of alcohol and motor vehicles, often together. His actions, including causing a motor vehicle accident, pose a danger to public safety.").

history of disarming defendants facing serious charges pending trial. *Id* at p. 3 (quoting *Quiroz*, 125 F.4th at 715, 718). Because Luna was on bond and indicted at the time of the § 922(g)(1) offense, the Government argues that the "nation's historical tradition of firearms regulation would allow for his disarmament." *Id.* at p. 4.

However, *Quiroz* addressed a different provision of § 922, one that explicitly prohibits individuals under felony indictment from shipping, transporting, or receiving firearms. Luna was not indicted under that section of the statute. Additionally, the Government provides no evidence as to the conditions of Luna's bond, Luna's knowledge of the indictment, or any other fact to support the denial of Luna's as-applied challenge on this basis.

**Alcohol laws**. Luna notes that "[t]here was very little regulation of drugs (related to firearm possession or otherwise) until the late 19th century[.]" D.E. 19, p. 9 (quoting *United States v. Connelly*, 117 F.4th 269, 279 (5th Cir. 2024)). He contends that the closest historical analogue to the predicate offense of possession of a controlled substance would be colonial-era laws concerning alcohol, and there is no evidence that these offenses were punishable by death or estate forfeiture. D.E. 19, p. 10 (citing *Connelly*, 117 F.4th at 279).

The Court finds that colonial-era laws concerning alcohol are not sufficiently analogous to Luna's predicate offense of possession of a controlled substance. As the *Connelly* court stated, "[f]ounding-era laws concerning guns and alcohol were few, and primarily concerned with (1) *misuse of weapons while intoxicated* and (2) disciplining state militias." 117 F.4th at 280 (emphasis added). These historical intoxication laws "provide

10 / 13

support for banning the *carry* of firearms while *actively intoxicated*." *Id.* at 281; *see also*

*Contreras*, 125 F.4th at 732 ("[T]here is a tradition of regulating [the defendant's] predicate

offense because he *was* intoxicated while he possessed the gun."). However, they are not

adequate historical analogues to the predicate offense of possession of a controlled

substance.

The Court finds that none of the Government's proffered historical laws are

sufficiently analogous to the predicate offense in this case. Therefore, the Government has

not met its burden of identifying a representative historical analogue for the predicate

offense of possession of a controlled substance.

### 2. Dangerousness

The Government also argues that disarmament is permissible by a showing that an

individual's criminal record demonstrates dangerousness. D.E. 20, pp. 8-9. The

Government cites several sources to support its position that there is a historical tradition

of constitutionally disarming those who have been convicted of serious crimes in order to

deter violence and lawlessness. *Id.* at pp. 7-16 (describing English history, pre-colonial

statutes, the Second Amendment ratification debates, and post-founding statutes—among

other sources—to demonstrate that permanently disarming dangerous felons is consistent

with the Nation's historical tradition of firearm regulation).

The Government also cites to the Sixth Circuit, *id.* at p. 9, which has held that

"§ 922(g)(1) is constitutional . . . as applied to dangerous people," *United States v.*

11 / 13

*Williams,* 113 F.4th 637, 662-63 (6th Cir. 2024).[4] Therefore, "district courts should make fact-specific dangerousness determinations after taking account of the unique circumstances of the individual, including details of his specific conviction" and "a defendant's entire criminal record [including] any evidence of past convictions in the record, as well as other judicially noticeable information—such as prior convictions." *Id.* at 659-60, 663. It further held that "district courts need not find a 'categorical' match to a specific common-law crime to show that a person is dangerous." *Id.* at 663.

It is unclear whether and to what extent courts are to consider a defendant's dangerousness in addressing a § 922(g)(1) as-applied challenge. It is also unclear what evidence a court is to consider in this regard, such as the nature and circumstances of the § 922(g)(1) offense, the predicate offense, and/or any convictions, whether felony or misdemeanor. The Government advocates for looking broadly at a defendant's criminal record, while Luna advocates for a narrow categorical approach, asking the Court to consider only the elements of the predicate offense.

Regardless of the scope of review a court must undertake, the Government here has provided no evidence—such as findings of fact, the record of the predicate offense, witness testimony, pretrial or presentence reports—to support a finding of dangerousness.

## B. Facial and Commerce Clause Challenges

Luna's facial and commerce clause challenges are foreclosed. *See Contreras,* 125

---

[4] To root its holding in historical tradition, the Sixth Circuit detailed English and colonial-era laws disarming individuals that were considered dangerous. *Williams*, 113 F.4th at 650-57.

F.4th at 729 ("As the *Diaz* panel found at least one constitutional application of 922(g)(1), [defendant's] facial challenge is foreclosed." (internal citation omitted)); *United States v. Alcantar*, 733 F.3d 143, 146 (5th Cir. 2013) (foreclosing Commerce Clause challenges to the constitutionality of § 922(g)(1)).[5]

## CONCLUSION

The Court finds that the Government has not met its burden of establishing a history and tradition of disarming someone with a criminal history of possession of a controlled substance and therefore **GRANTS** Luna's motion to dismiss (D.E. 19).

**ORDERED** on February 10, 2025.

NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE

---

[5] Luna acknowledges that both arguments are foreclosed.  D.E. 19, pp. 10, 13.